Filed 9/25/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA


THIRD APPELLATE DISTRICT


(Sacramento)


----


| | |
|---|---|
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | C085850 |
| Petitioner, | (Super. Ct. No. ADJ8815575) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and DEAN FITZPATRICK, | |
| Respondents. | |


ORIGINAL PROCEEDING:  Petition for writ of review.  Petition granted.  Noah Tempkin, Judge.

Carla R. Anene, Mary R. Huckabaa, and Lisa A. Stolzy, for Petitioner.

1

Finnegan, Marks, Theofel & Desmond, Randall G. Poppy, for the California Chamber of Commerce, as Amicus Curiae on behalf of Petitioner.

John F. Shields, for Respondent Workers Compensation Appeals Board.

Metzinger & Associates and Ronald M. Metzinger, for Respondent Dean Fitzpatrick.

Law Office of Joseph Waxman and James Achermann, for the California Applicants' Attorneys Association, as Amicus Curiae on behalf of Respondent Dean Fitzpatrick.

We granted the Department of Corrections and Rehabilitation's (Department) petition for a writ of review (Petition) of a Workers' Compensation Appeals Board (Board) opinion, which raises the following statutory construction question: Must a finding of permanent total disability[1] be made in accordance with Labor Code[2] section 4660,[3] or does section 4662, subdivision (b), provide a separate path to such a finding? We conclude section 4660 governs how the finding and award of permanent total disability shall be made "in accordance with the fact," as provided in section 4662, subdivision (b).

## GENERAL BACKGROUND

"The right to workers' compensation benefits is wholly statutory and is not derived from common law." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388.) To assist in a better understanding of the finding and award subject to this appeal and the discussion that follows, we begin with the general background of the

---

[1]     Other than those permanent disabilities conclusively presumed to be total as identified in Labor Code section 4662, subdivision (a).

[2]     All further section references are to the Labor Code unless otherwise specified.

[3]     Section 4660 applies "to injuries occurring before January 1, 2013." The injury at issue in this case occurred "during a cumulative period ending December 7, 2011."

applicable statutory and regulatory framework underlying workers' compensation permanent disability awards.

## I

### *The Permanent Disability System Generally*

"Employers are responsible to workers who sustain permanent disabling injuries that arise out of and in the course of their employment." (*Ogilvie v. Workers' Comp. Appeals Bd.* (2011) 197 Cal.App.4th 1262, 1269.) "A permanent disability is the irreversible residual of a work-related injury that causes impairment in earning capacity, impairment in the normal use of a member or a handicap in the open labor market." (*Id.* at p. 1270.) "A disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." (Cal. Code Regs., tit. 8, § 10152.)

There are two types of permanent disability: partial and total. Permanent total disability is "a permanent disability with a rating of 100 percent permanent disability only." (§ 4452.5, subd. (a).) Permanent partial disability is "a permanent disability with a rating of less than 100 percent permanent disability." (§ 4452.5, subd. (b).)

" 'Permanent disability payments are calculated by first expressing the degree of permanent disability as a percentage and then converting that percentage into an award based on a table.' [Citation.] Since 1937, permanent disability awards have been assessed using a schedule that 'was always expressly intended to manifest "prima facie evidence of the percentage of permanent disability to be attributed to each injury covered by the schedule." ' " (*Ogilvie v. Workers' Comp. Appeals Bd.*, *supra*, 197 Cal.App.4th at p. 1270.) "In 2004, the Legislature enacted omnibus changes to California's workers' compensation system as 'an urgency measure designed to alleviate a perceived crisis in skyrocketing workers' compensation costs.' " (*Ibid*.) The revised provisions, including section 4660, "substantially affected the assessment of an injured worker's permanent

3

disability." (*Milpitas Unified School Dist. v. Workers' Comp. Appeals Bd.* (2010) 187 Cal.App.4th 808, 818; Stats. 2004, ch. 34, § 32.)

## II

### *The Pertinent Statutes And Administrative Rule*

#### A

##### *Section 4660*

"Section 4660 prescribes the method for determining the percentages of permanent disability for workers' compensation purposes" for "injuries occurring before January 1, 2013." (*Chang v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 750, 753; § 4660.) "In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his or her age at the time of the injury, consideration being given to an employee's diminished future earning capacity." (§ 4660, subd. (a).) The " 'nature of the physical injury or disfigurement' " requirement "shall incorporate the descriptions and measurements of physical impairments and the corresponding percentages of impairments published in the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (5th Edition)" (hereinafter Guides) and "an employee's diminished future earning capacity shall be a numeric formula based on empirical data and findings from [a 2003 report] prepared by the RAND Institute for Civil Justice, and upon data from additional empirical studies" (§ 4660, subd. (b)(1) & (2)).

Although "[a] schedule for assessing permanent disability had been required since 1937 . . . no guidance was provided for the formulation of the schedule until the 2004 amendment." (*Milpitas Unified School Dist. v. Workers' Comp. Appeals Bd.*, *supra*, 187 Cal.App.4th at p. 818.) In section 4660, subdivision (c), the Legislature directed the administrative director "to develop and regularly amend the rating schedule based on specified data from empirical studies." (*Milpitas*, at p. 818.) "The schedule is to

4

'promote consistency, uniformity, and objectivity' [citation], and the scheduled rating continues to be 'prima facie evidence of the percentage of permanent disability to be attributed to each injury covered by the schedule.' " (*Ogilvie v. Workers' Comp. Appeals Bd.*, *supra*, 197 Cal.App.4th at p. 1271; § 4660, subds. (c) & (d).)

B

*Administrative Rule*

In accordance with the Legislature's directive in section 4660, subdivision (c), the administrative director adopted and published a revised schedule for rating permanent disabilities effective January 1, 2005 (2005 Schedule), "which incorporated the fifth edition of the Guides in its entirety." (*Milpitas Unified School Dist. v. Workers' Comp. Appeals Bd.*, *supra*, 187 Cal.App.4th at p. 818; Cal. Code Regs., tit. 8, § 9805; 2005 Schedule, p. 1-2.)

The 2005 Schedule states: "A permanent disability rating can range from 0% to 100%. Zero percent signifies no reduction of earning capacity, while 100% represents permanent total disability. A rating between 0% and 100% represents permanent partial disability. Permanent total disability represents a level of disability at which an employee has sustained a total loss of earning capacity. Some impairments are conclusively presumed to be totally disabling. (Lab. Code, § 4662.)" (2005 Schedule, pp. 1-2-1-3.) The process for calculating the permanent disability rating consists of multiple steps.

Generally, the evaluating physician first prepares an impairment rating for each body part arising out of the injury in accordance with the Guides. (2005 Schedule, p. 1-2.) "Initial impairment ratings are consolidated by body part . . . and converted to a whole person impairment rating." (*Ibid.*) A psychiatric impairment is evaluated by a physician using the global assessment of function (GAF) scale and the resultant score is then converted to a whole person impairment rating using the conversion table in the

2005 Schedule. (2005 Schedule, p. 1-12.) The whole person impairment rating is expressed as a percentage (*Almaraz v. Environmental Recovery Services/Guzman v. Milpitas Unified School Dist.* (2009) 74 Cal.Comp.Cases 1084, 1092) and "then adjusted to account for diminished future earning capacity, occupation and age at the time of injury to obtain a final permanent disability rating" (2005 Schedule, p. 1-2).

As applicable here, "[a] single injury can result in multiple impairments of several parts of the body. . . . Multiple impairments must be combined in a prescribed manner to produce a final overall rating."[4] (2005 Schedule, p. 1-5.) "When combining two or more ratings to create a composite rating, the ratings must be expressed in the same scale" and the numbers "are generally combined using the following formula where 'a' and 'b' are the decimal equivalents of the impairment or disability percentages: [¶] a+b(1-a)" (Formula). (2005 Schedule, pp. 1-3, 1-10.) Except for specified impairments (not applicable here), "all impairments are converted to the whole person scale, adjusted, and then combined to determine the final overall disability rating." (2005 Schedule, p. 1-11.)

Section 8 of the 2005 Schedule contains the combined values chart (Chart), and states: "Use this chart to combine two or more impairments, or two or more disabilities." (2005 Schedule, p. 8-1.) The combined values in the Chart range from 2% to 100%. (2005 Schedule, pp. 8-2-8-4.) The Guides describe the Chart as "[a] method used to combine multiple impairments, derived from the formula A+B(1-A) = *combined* values of A and B, which ensures that the summary value will not exceed 100% of the whole person." (Guides, p. 600.)

---

**4**    We note that, where separate injuries are involved, separate awards are required for each injury. (*Benson v. Workers' Comp. Appeals Bd.* (2009) 170 Cal.App.4th 1535.) Nothing in the record or the briefs indicates separate injuries are at issue here.

6

"In many cases, . . . the revision to the schedule for rating permanent disabilities [in the 2005 Schedule] reduces the amount a worker will be compensated for a permanent disability," as compared to the prior schedule. (*Genlyte Group, LLC v. Workers' Comp. Appeals Bd.* (2008) 158 Cal.App.4th 705, 715-716, fn. omitted; see, e.g., *Vera v. Workers' Comp. Appeals Bd.* (2007) 154 Cal.App.4th 996, 1000 [new schedule resulted in permanent disability rating of 26 percent; former schedule resulted in rating of 59 percent].) The scheduled rating is not absolute however. The scheduled rating (or component parts of the rating) may be rebutted based on the specific circumstances of a case. (See *Ogilvie v. Workers' Comp. Appeals Bd.*, *supra*, 197 Cal.App.4th at pp. 1263-1276; *Contra Costa County v. Workers' Comp. Appeals Bd.* (2015) 240 Cal.App.4th 746, 755-761; *Milpitas Unified School Dist. v. Workers' Comp. Appeals Bd.*, *supra*, 187 Cal.App.4th at pp. 827-829.)

C

*Section 4662*

Section 4662, subdivision (a), identifies four instances of "permanent disabilities [that] shall be conclusively presumed to be total in character." None of those instances is at issue here. Section 4662, subdivision (b), provides that "[i]n all other cases, permanent total disability shall be determined in accordance with the fact." For our purposes, section 4662 has remained substantively unchanged since its adoption in 1913.[5]

FACTUAL AND PROCEDURAL BACKGROUND

A workers' compensation administrative law judge found Dean Fitzpatrick "100 percent permanently totally disabled" as a result of injury to his heart and psyche

---

[5] The statute has been amended twice since its enactment. In 2007 and 2014, it was amended regarding injuries resulting in mental incapacity, and the 2014 amendment further renumbered the statute into subdivisions (a) and (b). (Stats. 2007, ch. 31, § 2; Stats. 2014, ch. 144, § 46.)

sustained during the course of his employment as a correctional officer. In his written findings, award and order, and accompanying opinion on decision (Decision), the administrative law judge relied on the reports of two doctors regarding Fitzpatrick's injury -- Peter Chang-Sing for his heart and Richard Lieberman for his psyche.

Chang-Sing rated Fitzpatrick's whole person impairment for his heart at 75 percent and his resulting permanent disability at 97 percent. Lieberman rated Fitzpatrick's GAF score at 45, resulting in 40 percent whole person impairment, and permanent disability of 71 percent for his psyche. It is undisputed that, combining the 97 percent and 71 percent ratings under the Chart and in accordance with the Formula, Fitzpatrick's permanent disability scheduled rating is 99 percent -- permanent partial disability.

In his Decision, the administrative law judge quoted substantial portions from Lieberman's reports, in which Lieberman detailed his dissatisfaction with Fitzpatrick's medications and treatment. In the section entitled "PERMANENT DISABILITY," the administrative law judge wrote: "In the July 16, 2015 report, Dr. Lieberman felt that applicant was ' …*on strict psychiatric grounds totally and permanently disabled*' . . . Dr. Lieberman elaborated further: [¶] 'I am dubious that this patient will return to work in any capacity. From a strict psychiatric standpoint, there is that possibility remotely that if he undergoes a cardiac transplant, and if this is successful, that his anxiety will significantly abate, which could allow him to return to work in some capacity, but assuming that he does not have this, and if his cardiac condition does not improve, he will not return to work.' "

The administrative law judge concluded: "Based upon [Fitzpatrick's] credible testimony, the medical reports of Dr. Chang-Sing and Dr. Lieberman, and in accordance with the facts (see Labor Code §4662(b)), it is found that applicant is permanently totally disabled." The administrative law judge did not mention or discuss the combined rating under the 2005 Schedule.

8

The Department appealed the Decision to the Board through a petition for reconsideration. The Board summarized the grounds for the Department's petition as follows: "[The Department] contests the finding that [Fitzpatrick] is totally permanently disabled, arguing that the opinion of [Lieberman] is not substantial medical evidence to support the award, nor is it adequate to rebut the scheduled rating of 99% permanent disability, as [Lieberman] fails to address the issue of [Fitzpatrick's] vocational feasibility. [The Department] further argues that the vocational expert evidence does not support the [judge's] determination, even though the [judge] did not rely upon this evidence. Finally, [the Department] argues that [Lieberman's] opinion does not provide a basis for finding [Fitzpatrick] totally permanently disabled 'in accordance with the fact,' under Labor Code section 4662(b), where the scheduled rating of [Fitzpatrick's] psychiatric disability alone does not come close to total permanent disability, and a rating combining his cardiac disability only rates at 99%."

The administrative law judge prepared a report and recommendation on petition for reconsideration (Report) for the Board's review. The Board affirmed the Decision in its opinion and order denying the petition for reconsideration (Opinion), and adopted and incorporated the Report "as the decision of the Board."

In the Report, the administrative law judge wrote: "With regard to the argument that [Fitzpatrick] didn't rebut the rating schedule, total permanent disability may be shown by presenting evidence showing total permanent disability 'in accordance with the fact' as provided in Labor Code section 4662, subdivision (b), or by rebutting a Labor Code section 4660 scheduled rating [citations]. The Appeals Board specifically discussed the different paths provided by these two Labor Code sections in [*Coca-Cola Enterprises, Inc. v. Workers' Comp. Appeals Bd.* (*Jaramillo*) (2012) 77 Cal.Comp.Cases 445 [writ. den.] (*Jaramillo*)]. In the present case, the undersigned relied upon Labor Code section 4662, subdivision (b), [Fitzpatrick's] credible testimony, and the opinions of [Lieberman and Chang-Sing]. Specifically, the undersigned relied upon Dr.

9

Lieberman's opinion that applicant was permanently and totally disabled psychiatrically . . . . [¶] . . . [The Department] has not presented evidence that would compromise Dr. Lieberman's opinion that [Fitzpatrick] was permanently and totally disabled. Dr. Lieberman clearly felt that [Fitzpatrick] was 100% disabled psychiatrically and was dubious that applicant could return to work in any capacity . . . ."

The Department subsequently petitioned for a writ of review of the Opinion, which we granted.

### DISCUSSION[6]

The Department and amicus curiae the California Chamber of Commerce argue the Board exceeded its jurisdiction by relying on section 4662, subdivision (b), to find permanent total disability because it should have proceeded pursuant to section 4660, which resulted in an unrebutted scheduled permanent disability rating of 99 percent. Fitzpatrick and amicus curiae the California Applicants' Attorneys Association argue the Board's Opinion should be affirmed because section 4662 applies to permanent total disability and section 4660 applies to permanent partial disability, and the Board's permanent total disability finding under section 4662, subdivision (b), "in accordance with the fact" was appropriate and is supported by substantial medical evidence.

In its opposition to the Petition, the Board acknowledges that Board panels have "provided varying analyses on how the [2004 amendments] should be construed," but does not defend the position taken in its Opinion. Instead, the Board raises a new theory on appeal -- that the finding of permanent total disability was made "within the parameters of section 4660, the *Guides* and the [2005 Schedule]" because the

---

[6] The Department's request for judicial notice of legislative history documents and the 2005 Schedule is granted.

10

administrative law judge appropriately *added* the two disability ratings together rather than using the combined rating under the Chart.[7]

## I

### *Standard Of Review*

Our review is limited to determining whether the Board acted "without or in excess of its powers" and whether its decision was unreasonable, not supported by substantial evidence, or procured by fraud. (§ 5952, subds. (a)-(d).) However, "[t]he findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review. Such questions of fact shall include ultimate facts and the findings and conclusions of the appeals board." (§ 5953.)

Unless clearly erroneous, the Board's interpretation of workers' compensation laws is entitled to great weight. (*Genlyte Group, LLC v. Workers' Comp. Appeals Bd.*, *supra*, 158 Cal.App.4th at p. 714.) "Nevertheless, issues of statutory interpretation and questions of law are subject to our independent review, and we need not defer to the [Board's] legal determinations where they are contrary to the plain meaning of the statute or prevailing case law." (*Contra Costa County v. Workers' Comp. Appeals Bd.*, *supra*, 240 Cal.App.4th at p. 756.) When the statutory language is clear and unambiguous, there is no room for the Board's interpretation. (*DuBois v. Workers' Comp. Appeals Bd.*, *supra*, 5 Cal.4th at pp. 387-388.)

---

[7]     At oral argument, the Board's counsel stated it was not arguing a new theory on appeal because "it's the same facts, the same evidence, the same law that's being argued here." We disagree. Neither the administrative law judge nor the Board discussed or explained why or how it could add disability ratings together to arrive at the final disability rating in this case, and they did not do so to reach the finding of permanent total disability. Therefore, the Department was not given an opportunity to object to or argue against such an application. This clearly shows the Board did, in fact, raise a new theory on appeal.

The Board argues our review is limited by section 5953 because "in this case the [Board's] finding of permanent total disability is in accordance with the fact and should be affirmed because it is [*sic*] was made within the statutory process and is supported by substantial evidence in light of the entire record." We disagree. The question presented on appeal is whether the Board correctly interpreted and applied sections 4660 and 4662, subdivision (b). This is an issue of statutory construction, subject to our independent review. Only if the Board correctly interpreted and applied the statutes do we review the Board's Opinion for substantial evidence.

II

*Permanent Total Disability Determinations Under*

*Section 4662, Subdivision (B), Are Subject To Section 4660*

We consider questions of statutory interpretation in accordance with well-established principles of statutory construction. "Our primary task is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] Toward this end we must accord a reasonable and commonsense interpretation consistent with the Legislature's purpose." (*Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168, 176-177.) "[W]e turn to the words in the statute and give effect to the statute according to the usual, ordinary import of the language used in framing it." (*Klee v. Workers' Comp. Appeals Bd.* (1989) 211 Cal.App.3d 1519, 1523.) We do not, however, look at those words in isolation. " 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.' " (*People v. Shabazz* (2006) 38 Cal.4th 55, 67.) "When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms." (*DuBois v. Workers' Comp. Appeals Bd.*, *supra*, 5 Cal.4th at pp. 387-388.)

We easily harmonize sections 4660 and 4662, subdivision (b).[8] Section 4662, subdivision (b), provides that, in nonconclusively presumed permanent total disability cases (i.e., those cases not enumerated in section 4662, subdivision (a)), permanent total disability may be found "in accordance with the fact." This section does not, however, address *how* such a determination shall be made; read plainly, it merely provides that a determination of permanent total disability shall be made on the facts of the case.

Section 4660 addresses *how* the determination on the facts shall be made in each case for injuries occurring before January 1, 2013.[9] Indeed, section 4660 expressly

---

[8] Amicus curiae the California Applicants' Attorneys Association points us to section 4660.1, subdivision (g), which provides: "Nothing in this section shall preclude a finding of permanent total disability in accordance with Section 4662." Section 4660.1 was added to the statutory scheme in 2012, with an effective date of January 1, 2013, addressing the determination of "the percentages of permanent partial or permanent total disability" for "injuries occurring on or after January 1, 2013." (§ 4660.1 & subd. (a); Stats. 2012, ch. 363, § 60.) As we can best surmise, it appears the California Applicants' Attorneys Association believes this subdivision supports its interpretation that the Legislature intended for section 4662 (both subdivisions (a) and (b)) to be construed independent and separate from section 4660. There are two problems with this argument. First, the language in section 4660.1, subdivision (g), does not appear in section 4660. We note that section 4660 was amended in 2012 when section 4660.1 was added (see Stats. 2012, ch. 363, § 59), but the Legislature did not add the language in section 4660.1, subdivision (g), to section 4660. We decline to read words into a statute that do not exist in its text. (Code Civ. Proc., § 1858.) Second, Fitzpatrick's injury occurred "during a cumulative period ending December 7, 2011," rendering section 4660.1 inapplicable because the injury did not occur on or after January 1, 2013. Accordingly, we do not address or interpret any provision of section 4660.1.

[9] Although we did not expressly address this issue, we noted this relationship between sections 4660 and 4662, subdivision (b), in *Vincent v. Industrial Acc. Com.* (1955) 136 Cal.App.2d 679, in which we explained: "[T]he determination referred to in subsection (a) of Labor Code, section 4660, will of necessity be arbitrary to a degree, and no one can determine with nicety exactly how much an injured employee should receive for the permanent loss, or loss of use, of a particular member of his body. This is illustrated by the provisions of section 4662 which provide that except as to certain enumerated cases, the determination and extent of permanent disability shall be made by the commission 'in accordance with the fact.' [¶] To assist the commission in this

13

applies to the determination of "the percentages of permanent disability" and permanent total disability is defined by statute as a percentage of permanent disability, i.e., 100 percent. (§§ 4660, subds. (a), (d), 4452.5, subd. (a).) This definition of permanent total disability applies to the division in which section 4660 appears and was added in 1973 (predating the 2004 amendment to section 4660). (§ 4452.5; Stats. 1973, ch. 1023 § 1.) We presume the Legislature, when amending section 4660, was aware of existing related laws and intended to maintain a consistent body of statutes on the same subject matter. (*People v. Vessell* (1995) 36 Cal.App.4th 285, 289.)

The 2005 Schedule (a formal administrative rule), implementing the requirements in section 4660, also identifies permanent total disability as a percentage of disability: "A permanent disability rating can range from 0% to 100%. Zero percent signifies no reduction of earning capacity, while 100% represents permanent total disability. A rating between 0% and 100% represents permanent partial disability." (2005 Schedule, p. 1-2.) A "final permanent disability rating" is obtained by going through the steps outlined in the 2005 Schedule. (2005 Schedule, pp. 1-2-1-16.)

Importantly, an employee can obtain a disability rating of 100 percent under section 4660.[10] "[T]he final overall permanent disability rating percentage for a single

---

regard, and to maintain as much uniformity as possible, the Legislature has authorized it to adopt a schedule for the determination of percentages of permanent disability. [Citation.] It is therein provided that, 'The commission may prepare, adopt and from time to time amend . . .' such a schedule and that it shall be 'prima facie evidence' of the percentage of disability to be attributed to each injury covered by the schedule." (*Vincent*, at p. 681.) While the statutes have been amended since 1955, their interrelationship has not changed.

[10] We posed the question, whether an applicant can obtain a 100 percent permanent disability rating under section 4660, to the parties during oral argument. While counsel for the Board and the California Applicants' Attorneys Association conceded that an applicant can obtain a permanent total disability rating under section 4660 (although it would be difficult to do so), Fitzpatrick's counsel argued section 4660 "does not get to

14

impairment" is shown "on the age adjustment table," which contains a 100 percent disability rating. (2005 Schedule, pp. 1-9, 6-5.) For combined impairments or disabilities, the Chart also contains over 50 combined ratings of 100 percent. (2005 Schedule, pp. 8-1, 8-3-8-4.) We further note the scheduled rating under section 4660 is rebuttable, which gives an applicant the opportunity to present evidence supporting a 100 percent disability rating when the scheduled rating is less.

In *Ogilvie*, the court addressed " 'whether, in light of the amendments to section 4660 enacted in Senate Bill No. 899 (2003-2004 Reg. Sess.), it is permissible to depart from a scheduled rating on the basis of vocational expert opinion that an employee has a greater loss of future earning capacity than reflected in a scheduled rating.' [Citation.] Giving consideration to the purpose behind and the language of the amendments, the *Ogilvie* court answered this question with a qualified 'yes.' It held that there are three permissible methods by which the scheduled rating could be rebutted." (*Contra Costa County v. Workers' Comp. Appeals Bd.*, *supra*, 240 Cal.App.4th at p. 751.)

"First, the court concluded that the Legislature left unchanged the case law allowing 'the schedule to be rebutted when a party can show a factual error in the application of a formula or the preparation of the schedule.' [Citation.] Second, the Legislature also left intact the cases, including [*LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234], recognizing 'that a scheduled rating has been effectively rebutted . . . when the injury to the employee impairs his or her rehabilitation, and for that reason, the employee's diminished future earning capacity is greater than reflected in the employee's scheduled rating.' [Citation.] The court interpreted *LeBoeuf* and its progeny as limited in application 'to cases where the employee's diminished future earnings are directly attributable to the employee's work-related injury, and not due to nonindustrial

---

total permanent disability" and "by definition and review of the section shows that it only goes to 99 percent." As we explain, Fitzpatrick's counsel is mistaken.

factors.' [Citation.] Third and finally, the court held '[a] scheduled rating may be rebutted when a claimant can demonstrate that the nature or severity of the claimant's injury is not captured within the sampling of disabled workers that was used to compute the adjustment factor.' " (*Contra Costa County v. Workers' Comp. Appeals Bd.*, *supra*, 240 Cal.App.4th at p. 751.)

Accordingly, by proceeding under section 4660, Fitzpatrick would have had the opportunity to rebut the 99 percent scheduled disability rating to show the appropriate rating is permanent total disability.[11] That it is difficult or onerous to obtain a 100 percent rating under section 4660 or through rebuttal of the scheduled rating does not affect our analysis. Such policy considerations are left to the Legislature; we interpret and apply the law as provided in the statutes.

Our interpretation of sections 4660 and 4662, subdivision (b), is squarely at odds with the Board panel's interpretation of those statutes in *Jaramillo* (on which the administrative law judge and the Board relied in this case), in which the panel stated "in contrast to Labor Code § 4662, which applies to [permanent total disability], Labor Code § 4660 addresses partial disability, i.e. 'the percentages of permanent disability.' "[12] (*Jaramillo*, *supra*, 77 Cal.Comp.Cases at p. 447.) We thus disapprove of *Jaramillo* with respect to its analysis on this issue, and annul the Board's Opinion for the same reason.[13]

---

[11]    We note that, although not relied upon by the administrative law judge or the Board, a vocational evaluator did submit a report in this case.

[12]    While courts permit citation of California Compensation Cases and occasionally cite them in published opinions, such writ-denied summaries of decisions by the Board have no stare decisis effect and we are not bound by them. (*Parker v. Workers' Comp. Appeals Bd.* (1992) 9 Cal.App.4th 1636, 1646; *Wings West Airlines v. Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1053, fn. 4.)

[13]    We asked Fitzpatrick's counsel during oral argument to what extent the outcome of this case depended on us accepting the interpretation of sections 4660 and 4662 in *Jaramillo*. Although the administrative law judge and the Board relied on the statutory

16

To limit section 4660's application to permanent partial disability only, as proposed in *Jaramillo* and the Board's Opinion, we would have to add or read the word "partial" or other words excluding permanent total disability into the statute. We decline to do so. (Code Civ. Proc., § 1858 [we do not insert what has been omitted or omit what has been inserted into a statute].) If the Legislature intended to exclude permanent total disability ratings from the requirements of section 4660, it would have said so. (Cf. *Repass v. Workers' Comp. Div.* (W.Va. 2002) 212 W.Va. 86, 95 [West Virginia statute states "the degree of permanent disability *other than permanent total disability* shall be determined exclusively by the degree of whole body medical impairment that a claimant has suffered" per the Guides], italics added.)

The *Jaramillo* panel's reliance on sections 4658, subdivision (d), and 4659, subdivision (b), is also unavailing. (*Jaramillo*, *supra*, 77 Cal.Comp.Cases at p. 447.) Section 4658, subdivision (d), provides disability payment computations for injuries depending on "the percentage of disability to total disability" up to 99.75 percent, while section 4659, subdivision (b), provides that "[i]f the permanent disability is total, the indemnity . . . shall be paid during the remainder of life." The *Jaramillo* panel stated these "separate sections for computing disability payments in cases involving partial and total disability confirms that there is a meaningful difference between disabilities that are

interpretation in *Jaramillo*, and Fitzpatrick argued in favor of *Jaramillo*'s reasoning in his briefing, Fitzpatrick's counsel responded that *Jaramillo* was inapplicable to the outcome of this case because the permanent total disability finding was based on the medical information introduced. The Board's counsel also attempted to distinguish *Jaramillo*, stating: "In this case there was never a stipulation as to a rating of the disability. This is unlike the *Jaramillo* or *Anaya* cases or other cases [unintelligible] *Ogilvie*. There the parties stipulated to what the scheduled rating would be. That . . . there was no such stipulation here." Nothing in *Jaramillo* indicates the parties stipulated to the rating of disability. Nor do we understand how the Board seeks to distinguish *Jaramillo* on such grounds when the administrative law judge and the Board in this case relied on *Jaramillo* for its discussion of "the different paths" provided by sections 4660 and 4662, i.e., the *statutory interpretation* set forth in *Jaramillo* with which we disagree.

*a percentage* of total disability and those that are *total*." (*Jaramillo*, at p. 447.) These statutes, however, only provide different methods for calculating disability *payments* based on the final permanent disability rating; they do not inform the process for reaching the final permanent disability rating finding. (See *Ogilvie v. Workers' Comp. Appeals Bd.*, *supra*, 197 Cal.App.4th at p. 1270 [" 'Permanent disability payments are calculated by *first* expressing the degree of permanent disability as a percentage and *then* converting that percentage into an award based on a table' "], italics added.)

We further see no basis for concluding section 4662, subdivision (b), provides a second independent path to permanent total disability findings separate from section 4660. Section 4660 is *mandatory*. There is nothing ambiguous or unclear in section 4660's directive that "[i]n determining *the percentages of permanent disability*, account *shall* be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his or her age at the time of the injury, consideration being given to an employee's diminished future earning capacity" and the 2005 Schedule "*shall* be prima facie evidence of the *percentage of permanent disability* to be attributed to each injury covered by the schedule." (§§ 4660, subds. (a), (c), italics added, 15 [" '[s]hall' is mandatory and 'may' is permissive"].)

Moreover, our interpretation harmonizes provisions relating to the same subject matter and gives effect to the Legislature's intent to promote "consistency, uniformity, and objectivity in the overall process of determining disability across individuals." (*Milpitas Unified School Dist. v. Workers' Comp. Appeals Bd.*, *supra*, 187 Cal.App.4th at p. 823.) Our interpretation "remain[s] loyal to the Legislature's design to provide a system that is objective and uniform in application." (*Ogilvie v. Workers' Comp. Appeals Bd.*, *supra*, 197 Cal.App.4th at p. 1273; see *Day v. City of Fontana* (2011) 25 Cal.4th 268, 272 [statute should be interpreted with the aim of " ' "promoting rather than defeating" ' " its purpose].) The Board's interpretation and approach would "return us to the ad hoc decisionmaking that prevailed prior to 2004" with regard to permanent

18

disability findings, which is exactly what the Legislature sought to avoid in enacting the amendments.  (*Contra Costa County v. Workers' Comp. Appeals Bd.*, *supra*, 240 Cal.App.4th at p. 761.)  It would allow an administrative law judge to make a subjective determination that may lead to inconsistent and nonuniform permanent disability ratings with respect to the most expensive claims under our workers' compensation framework. Such a result cannot be squared with the Legislature's intent.

While we acknowledge section 3202 requires us to liberally construe the workers' compensation law in favor of the injured worker, it " 'cannot supplant the intent of the Legislature as expressed in a particular statute.'  [Citation.]  If the Legislature's intent appears from the language and context of the relevant statutory provisions, then we must effectuate that intent . . . ."  (*Kopping v. Workers' Comp. Appeals Bd.* (2006) 142 Cal.App.4th 1099, 1106.)  We do so here.

III

*We Do Not Consider The Board's New Theory On Appeal*

The Board argues "[n]either the *Guides* nor the [2005 Schedule] require use of the [Chart] to combine multiple *disability* values" and "the *Guides* and [2005 Schedule] recognize that multiple permanent disability percentages should be combined in the way that results in a more accurate rating, and the conclusions of the examining physician are key to reaching an accurate result."  The Department argues this new theory should be rejected on appeal because neither the administrative law judge nor the Board raised or considered this theory in finding and awarding permanent total disability, and, even if we did consider the argument, there is insufficient evidence in the record to support the Opinion on such grounds.

Principles of fairness generally militate against allowing a litigant to change his or her position on appeal.  (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316; accord, e.g., *City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1327.) There are exceptions to this rule, including where a new theory pertains only to questions

19

of law based on undisputed facts. (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709.) "[A]ppellate courts are most likely to consider an issue involving undisputed facts for the first time on appeal where the issue involves important questions of public policy or public concern." (*Duran v. Obesity Research Institute, LLC* (2016) 1 Cal.App.5th 635, 646.) But even then, whether we will entertain a new theory raised for the first time on appeal is strictly a matter of discretion. (See *Hussey-Head v. World Savings & Loan Assn.* (2003) 111 Cal.App.4th 773, 783, fn. 7.)

We decline to address the Board's contention because, even if we were to agree with the Board regarding its interpretation of the 2005 Schedule (which we do not decide), it would not change the outcome of this case. The permanent total disability finding and award must be supported by substantial evidence. (§ 5952, subd. (d); *Place v. Workers' Comp. Appeals Bd.* (1970) 3 Cal.3d 372, 377-378.) While the Board argues that the conclusions of the examining physician may support use of the additive method to combine multiple disability values, the Board points to no evidence that addition of the disability values would result in a "more accurate rating" than the combined value under the Chart in this case, as it contends. Accordingly, even if the Board's theory proved plausible, there would be insufficient evidence to affirm the finding and award on that theory.[14]

---

[14] Although we do not consider the Board's new theory, we would be remiss in failing to comment on the fact that the Board attempted to support its position by relying on the Schedule for Rating Permanent Disabilities *dated April 1997* (1997 Schedule), relying on language not existent in the 2005 Schedule, and cases *predating* the 2004 legislative amendments and the 2005 Schedule for the proposition that "[j]udicial decisions agreed that combining factors of disability by addition was appropriate if it provided a more valid measure, and it was expected that the [Board] would take into account the conclusions of the examining physician and would exercise sound discretion in rating permanent disability." The 2005 Schedule differs *substantially* from the 1997 Schedule, and appropriately so given the 2004 amendments and the Legislature's directive.

DISPOSITION

The Board's Opinion after reconsideration is annulled and the matter is remanded to the Board for further proceedings consistent with our opinion.  Each party to bear its own costs.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

/s/

Robie, J.

We concur:

/s/

Hull, Acting P. J.

/s/

Mauro, J.