Filed 9/18/19; Certified for Publication 10/2/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | B292915 |
|---|---|
| Petitioner, | (W.C.A.B. No. ADJ7964733) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, | |
| Respondents. | |

PROCEEDINGS to review a decision of the Workers' Compensation Appeals Board. Annulled and remanded with directions.

Trinidad & Associates, Randy C. Woolford; Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, Mark G. Bonino, and Giuliana R. Ferrante for Petitioner.

Ellin Sims Langille for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioner.

Guilford Sarvas & Carbonara, Frank E. Carbonara, Richard E. Guilford; Cipolla, Calaba, Marrone & Wollman, Amy Sklar for Respondent California Insurance Guarantee Association.

Allison J. Fairchild, Margaret W. Hosel for Respondent Workers' Compensation Appeals Board.

_____

Two employers agreed that the general employer would obtain workers' compensation insurance for employees it leased to the special employer.[1]  Relying on this agreement, the special employer obtained workers' compensation insurance for its own employees with a "limiting endorsement" excluding coverage for special employees.  These agreements were in place for several years when a special employee was injured on the job while assigned to the special employer.  The general employer's insurer thereafter became insolvent and California Insurance Guarantee Association (CIGA)[2] took over the administration of the claim.

_____

[1] "If one employer (the general employer) sends an employee to work for another party (the special employer) and both have the right to control the employee's activities, a dual employment exists."  (*County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 405.)  Both general and special employers are liable for any injuries to the employee arising out of and occurring in the course of employment.  (*Ibid.*)

[2] CIGA is an unincorporated association of insurers licensed in California, which pays claims of insolvent insurers set forth by Insurance Code section 1063 et seq.  (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 786-787.)

A regulation in effect at the time of the injury required that in the instance of a limiting endorsement excluding coverage for special employees, the special employer was required to "affirm[] to the insurer in writing" that coverage had been otherwise obtained. (Cal. Code Regs., tit. 10 (WCAB Rules), § 2259, subd. (e), eff. up to April 1, 2016 (section 2259(e)).) Although there was a written endorsement excluding coverage for special employees and the special employee's carrier was informed the general employee had obtained the required workers' compensation insurance, the Workers' Compensation Appeals Board (appeals board) invalidated the limiting endorsement because the limiting endorsement had not been signed by the special employer. Thus, the insurer for the special employer was ordered to bear all liability for compensation to the injured worker when the general employer's insurer became insolvent.

While the appeals board was correct that the limiting endorsement had not been signed by the special employer, the written affirmation required by the regulation then in effect is not limited to a signature, as we explain below. Taking into account the circumstances of the entire transaction and its history, there was substantial compliance with the requirement of a written affirmation. We therefore annul the decision of the appeals board and remand the case with directions to find that the special employer had a valid endorsement in its workers' compensation insurance policy excluding coverage for special employees. Accordingly, CIGA shall be liable for the claim as a covered claim within the meaning of Insurance Code section 1063.1.

3

## THE LEGAL FRAMEWORK

Insurance Code section 11663[3] sets forth the general principle that, as between insurers of general and special employers, it is the insurer of the general employer who is liable for injuries of special employees.  Labor Code section 3602, subdivision (d) sharpens the focus by providing that a special employer may enter into an agreement with a general employer under which the latter agrees to obtain, and in fact obtains, coverage for the special employees.[4]

The aforesaid legislative policies were (and are) carried into execution by a standard endorsement in the workers' compensation insurance contract between the special employer

---

[3] "As between insurers of general and special employers, one which insures the liability of the general employer is liable for the entire cost of compensation payable on account of injury occurring in the course of and arising out of general and special employments unless the special employer had the employee on his or her payroll at the time of injury, in which case the insurer of the special employer is solely liable.  For the purposes of this section, a self-insured or lawfully uninsured employer is deemed and treated as an insurer of his or her workers' compensation liability."  (Ins. Code, § 11663.)

[4] "For the purposes of this division, including Sections 3700 and 3706, an employer may secure the payment of compensation on employees provided to it by agreement by another employer by entering into a valid and enforceable agreement with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees."  (Lab. Code, § 3602, subd. (d)(1).)

Further statutory references are to the Labor Code unless otherwise stated.

4

and its insurer that *excludes* from coverage special employees as long as there is an assurance that the general employer has agreed to obtain, and has obtained, coverage for special employees.

In 2011, a customized limiting and restricting endorsement, like the one at issue in this case, could be used "[w]here the endorsement seeks to exclude only such liability of the employer for compensation as the latter *affirms to the insurer in writing*[5] is otherwise secured or is lawfully uninsured (e.g., liability of the State and its political subdivisions and institutions)." (WCAB Rules, § 2259, subd. (e), italics added.) Using a customized endorsement under this regulation required filing the endorsement and getting approval from the Insurance Commissioner. (WCAB Rules, § 2266.)

As of April 1, 2016, WCAB Rules, section 2259 was amended to add subdivision (a)(7), which provides that a limiting and restricting endorsement may be used "[t]o exclude liability of an employer for employees who are covered under another employer's workers' compensation policy pursuant to an agreement made under Labor Code Section 3602(d)." As noted, subdivision (a)(7) became effective on April 1, 2016, and did not delete or replace WCAB Rules, section 2259(e). In fact, WCAB Rules, section 2259(e) was renumbered as section 2259, subdivision (a)(5) and is still in effect.

Travelers Property Casualty Company of America (Travelers), which was the special employer's workers' compensation insurer, obtained the Insurance Commissioner's

---

[5] It is the italicized phrase that is at issue in this case.

5

approval to use the standard limiting endorsement in its policies that was based on the regulation in effect in 2011.

## THE FACTS

### A.    Contract between StaffChex and Jessie Lord

The general employer, StaffChex, Inc. (StaffChex) and the special employer, Jessie Lord Bakery LLC (Jessie Lord), entered into a labor and service agreement on December 16, 2008.  In exchange for payments at a mark-up for StaffChex employees, StaffChex was to pay all wages to the employees and all related workers' compensation insurance.  The labor agreement submitted into evidence was not signed by the parties to the contract but was initialed and amended by handwritten notations.  Testimony from Gloria Knowles (Knowles), the human resources manager at Jessie Lord, confirmed that Jessie Lord and StaffChex performed the terms of the agreement, including StaffChex obtaining workers' compensation coverage for the employees assigned to Jessie Lord.

StaffChex was insured for workers' compensation by Ullico Casualty Company (Ullico).  Ullico was liquidated on May 30, 2013, and CIGA took over the administration of Ullico's claims.

### B.    Contract between Jessie Lord and Travelers

Jessie Lord had workers' compensation for its own employees through Travelers (Travelers policy).  The Travelers policy was transmitted electronically by Jessie Lord's broker.

Contained within the Travelers policy was an endorsement agreement limiting and restricting the insurance (endorsement WC 04 03 17 (00)), such that the policy did not insure "[a]ny liability you [Jessie Lord] may have as the special employer of an employee who is not on your payroll at the time of injury, based upon your representation that: (1) you have entered into a valid

and enforceable agreement pursuant to Labor Code Section 3602(d) with the employee's general employer under which the general employer agrees to secure the payment of compensation for such employee and (2) the general employer has obtained workers' compensation coverage for the employee."

The endorsement also provided that "[b]y signature below, you affirm that, with respect to any employee who is also the employee of a general employer, (1) you have entered into a valid and enforceable agreement pursuant to Labor Code Section 3602(d) with the employee's general employer under which the general employer agrees to secure the payment of compensation for such employee and (2) the general employer has obtained workers' compensation coverage for the employee." The space provided for a countersignature by Jesse Lord was blank. However, nothing contained in the endorsement provides that the endorsement is invalid without a countersignature.

## C. The employee and his injury

The employee, Jose Luis Mastache (Mastache), worked at Jessie Lord as a pallet handler as a StaffChex employee when he was injured on August 3, 2011.

**PERTINENT PROCEDURAL HISTORY**

## A. Underlying claims

CIGA petitioned the appeals board to join Jessie Lord and Travelers as party defendants. CIGA's position was that, because Jessie Lord was the special employer at the time of Mastache's injury and was insured for workers' compensation coverage through Travelers, Travelers constituted "other insurance"

7

relieving CIGA of all liability.[6]  Jessie Lord and Travelers were joined as party defendants on July 2, 2015.

Pursuant to section 5275, whether Travelers provided workers' compensation insurance coverage for Mastache's industrial injury was submitted to arbitration.

**B.      Arbitrator's Decision**

The arbitrator found the Travelers policy was not "other insurance" available to Mastache and therefore did not relieve CIGA of liability for Mastache's claim.  The arbitrator relied on the unrebutted testimony of Knowles and found the labor agreement between StaffChex and Jessie Lord, though not signed, was in effect from 2008 through 2014.  The arbitrator also found there was no joint and several liability between Jessie Lord and StaffChex.

The arbitrator rejected CIGA's contention that the endorsement was invalid because it was not signed.  The Travelers policy was accepted by StaffChex and Jessie Lord and became a valid contract.  The arbitrator found the failure to sign the endorsement was not fatal.  In support of his conclusion, the arbitrator noted that the affirmation requirement was removed from the regulation (WCAB Rules, § 2259) and would apply retroactively as a procedural regulation.

---

[6] CIGA is authorized by statute to pay only "covered claims" of an insolvent insurer.  (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 557.) Insurance Code section 1063.1, subdivision (c)(9) provides that " 'Covered claims' does not include (A) a claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured . . . ."  (Hereinafter referred to as "other insurance.")

8

CIGA petitioned for reconsideration. CIGA also requested permissive judicial notice of bulletins issued by the Workers' Compensation Insurance Rating Bureau. Travelers' answer also sought judicial notice of the reasons for the proposed 2016 amendments, rulemaking file, and regulatory notice as to WCAB Rules, section 2259.

The arbitrator recommended reconsideration be denied.

## C. Appeals Board Opinion

The appeals board declined to take judicial notice of the additional rulemaking documents not produced at the arbitration hearing.

The appeals board granted reconsideration, rescinded the arbitrator's decision, and found that the Travelers policy provided coverage for Jessie Lord. The appeals board identified two incorrect premises for the conclusion that CIGA remained liable for Mastache's benefits. The first error was that an agreement between a general employer and a special employer could eliminate joint and several liability for their joint employees. The second was that the Travelers policy excluded certain employees based on a limiting and restricting endorsement that did not comply with the Insurance Commissioner's regulations in effect at the time the insurance contract was formed.

The appeals board found that because both employers remained jointly and severally liable, if either employer's insurer became insolvent, the remaining insurer would be responsible for paying the claim unless the remaining insurer's policy excluded coverage for the claim. The appeals board found the endorsement with space for countersignature was approved by the Insurance Commissioner but the endorsement attached to the Travelers policy did not have the required written affirmation of the special

9

employer by way of countersignature. The written affirmation was required under WCAB Rules, section 2259(e) in effect at the time the Travelers policy was written. The appeals board found: "There is no evidence that Travelers obtained written affirmation either by a countersignature on the endorsement or through a separate document. [¶] Furthermore, by the terms of the endorsement, it only excludes liability that the employer affirms in writing is otherwise insured. Without a written affirmation, the endorsement has no effect."

The appeals board therefore concluded the Travelers policy was not limited and restricted to exclude employees leased from StaffChex and the Travelers policy was "other insurance" relieving CIGA of liability for Mastache's benefits.

Travelers petitioned for reconsideration. Travelers requested judicial notice of the reasons for the proposed 2016 amendments, rulemaking file, and regulatory notice as to WCAB Rules, section 2259.

The appeals board denied reconsideration relying on its earlier opinion granting CIGA's petition for reconsideration. Travelers' request for judicial notice was denied as a supplemental pleading not requested by the appeals board. In addition, the appeals board found the rulemaking file did not contain proof that was relevant to the issue of whether the addition of a new basis for limiting and restricting a policy was a substantive or procedural change.

**D.    Amicus Curiae**

On December 7, 2018, the California Workers' Compensation Institute filed a motion for leave to file an amicus curiae brief in support of Travelers' petition. The sole purpose of the amicus brief was to address whether the appeals board erred

10

in refusing to consider the regulatory intent evidence related to the 2016 amendment of WCAB Rules, section 2259.  The amicus brief contended that Evidence Code section 451 requires judicial notice be taken of all board and department rules, regulations, and amendments, including the supporting rulemaking file.  Even if not mandatory, the amicus brief alternatively argued that the appeals board abused its discretion under Evidence Code section 452 in refusing to grant judicial notice and consider the rulemaking file.

## E.     Grant of Petition for a Writ of Review

We granted Travelers' petition for a writ of review.  The appeals board filed a response stating that the Insurance Commissioner was within its power to require a written affirmation to exclude leased employees and that WCAB Rules, section 2259, subdivision (a)(7) was substantive and should not be applied retroactively thus making the rulemaking file unnecessary for determination of the present issue.  Moreover, section 3602, subdivision (d) and Insurance Code section 11663 did not relieve Travelers of liability because the unsigned endorsement was not valid.

Travelers' reply asserted that the requirement of a countersignature contradicted the requirements of section 3602, subdivision (d) and Insurance Code section 11663 and that a countersignature is not required to form a valid and enforceable electronically delivered contract.  However, if a writing was required, the labor agreement was a valid written affirmation.  Travelers also claimed WCAB Rules, section 2259, subdivision (a)(7) should be applied retroactively, which made the rulemaking file relevant and judicially noticeable for the first time on appeal.

11

## DISCUSSION

## A.      Standard of Review

Our review of an appeals board decision is limited to a decision that is in excess of the appeals board's jurisdiction, that is procured by fraud or is unreasonable, or is not supported by substantial evidence.  (§ 5952.)  A decision based on factual findings which are supported by substantial evidence is affirmed by the reviewing court.  However, an appellate court is not bound by factual findings that are unreasonable, illogical, improbable, or inequitable when viewed in light of the entire record and the overall statutory scheme.  (*Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254.)

The standard of review for interpretation of a statute or regulation is de novo but great weight is given to the appeals board's construction unless it is clearly erroneous.  (*Vera v. Workers' Comp. Appeals Bd.* (2007) 154 Cal.App.4th 996, 1003.)

The question of whether Travelers is "other insurance," relieving CIGA of liability, turns on whether the endorsement in the Travelers policy is valid.  To the extent that the issue is one of policy interpretation, the issue is a question of law and is reviewed de novo under settled rules of contract interpretation.  (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1377.)  "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties."  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.)

12

**B. There were two separate documents that affirmed that StaffChex would and did procure coverage for the special employees**

We begin with the observation that we are addressing a commercial relationship between two relatively sophisticated parties who embarked on a course of dealing that had been in place for a number of years before Mastache was injured. That relationship included an undertaking by StaffChex to provide workers' compensation insurance for persons it sent to work for Jessie Lord, an undertaking for which StaffChex was duly compensated by Jessie Lord. It is undisputed that both Jessie Lord and StaffChex lived up to the terms of their agreement, including StaffChex obtaining workers' compensation coverage for the employees assigned as special employees to Jessie Lord.

Obviously, StaffChex and Jessie Lord needed to comply with existing laws and regulations, which they did first by agreeing to specific provisions in the contract between them and then by including the required limiting endorsement in the contract between Jessie Lord and its workers' compensation carrier, Travelers. At this point, a third sophisticated party, Travelers, entered the picture who appreciated the need for the limiting endorsement, having obtained approval of that very form from the Insurance Commissioner. Thus, a three-sided relationship was put into place, the sole purpose of which was to comply with existing statutes and regulations that were designed to ensure that there was workers' compensation insurance coverage for injured workers under an employment scheme where the worker was technically employed by one employer while working for another.

13

This entire structure was set aside by the appeals board, ostensibly over the absence of a signature by Jessie Lord on the endorsement to the contract with Travelers, even though this contractual structure had been functioning for three years when Mastache was injured. As set forth below, the parties complied with the applicable regulatory requirements and it is undisputed that they complied with their contractual commitments to one another. They performed these contractual commitments for several years. We conclude that the appeal board's decision was thus unreasonable and inequitable.

The regulation in effect in 2011 required an affirmation "in writing" that insurance had been obtained for the special employees. Surely, the contract between Jessie Lord and StaffChex, which required the latter to procure insurance for special employees, qualifies as a "writing." But this is not the only writing that exists. The contract between Jessie Lord and Travelers included the specific representation that Jessie Lord had entered into a contract with the general employer under which the latter would insure the special employees. This too was a writing. Both writings were supported by the Ullico policy, which was the insurance policy required by both writings. Although the Ullico policy is not in the record, no one has argued that the Ullico policy would not have covered Mastache's injury. Indeed, CIGA began administering Mastache's claim.

The appeals board however found: "There is no evidence that Travelers obtained the required written affirmation either by a countersignature on the endorsement or through a separate document." There were in fact *two* "separate documents" that affirmed that StaffChex would, and in fact did, procure coverage for the special employees.

14

Nullifying a three-sided, sophisticated contractual structure, under which all three parties performed their obligations in good faith over the absence of a signature on an *endorsement* to a contract disregards reality and is inequitable.

## C. The requirement of a signature on the endorsement was deleted by the parties

It is not the regulation, but the standard endorsement used by Travelers that references a signature on the endorsement. In 2011, WCAB Rules, section 2259(e) merely required affirmance in writing; it did not specify that any such affirmance must be by the special employer's countersignature for the endorsement to be valid. Thus, the signature requirement at issue here was created by contract and is subject to the law of contracts. As noted earlier, nothing in the endorsement approved by the Insurance Commissioner provided that the endorsement was invalid if a countersignature was not included.

It is a time-honored principle that the conduct of the parties is given great weight in the interpretation of a contract. "Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." (Rest.2d Contracts, § 202(4).) The principle is amply reflected in our case law. (See cases collected in 1 Witkin, Summary of Cal. Law (11th ed. 2017), Contracts, § 772(2), pp. 828-830.)

As one of these many decisions put it: "This rule of practical construction is predicated on the common sense concept that 'actions speak louder than words.' Words are frequently but an imperfect medium to convey thought and intention. When the

parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent." (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 754.)

Here, the parties fully performed beginning in 2008 under both contracts with an unsigned endorsement to the contract between Jessie Lord and Travelers. That is, StaffChex complied with its obligation to procure coverage for special employees and Travelers provided the bargained-for insurance without requiring a signature on the exclusionary endorsement. The reason for the signature was to make sure that StaffChex had obtained coverage for special employees. But, as it turned out, it was never in doubt that StaffChex had done exactly that. In addition, for three years, the three parties – Jessie Lord, StaffChex and Travelers – performed their contractual commitments despite the absence of a signature on the endorsement.

"If necessary to carry out the intention of a contract, words may be transposed, rejected, or supplied, to make its meaning more clear." (*Heidlebaugh v. Miller* (1954) 126 Cal.App.2d 35, 38.) The signature was not an essential part of the endorsement. What was important was that Jessie Lord would do all things necessary and appropriate to ensure that StaffChex had covered the special employees, not whether Jessie Lord had countersigned an endorsement.

**D.    Mastache's injury is a "covered claim"**

Given our conclusion that the Travelers policy properly excluded special employees working for Jessie Lord, the Travelers policy does not constitute "other insurance" under subdivision (c)(9) of Insurance Code section 1063.1. Mastache's

16

injury is therefore a "covered claim" for purposes of Insurance Code section 1063.1.

One case cited by all parties concluded that a special employer's insurance was "other insurance" when the general employer's insurer became insolvent. In *Fireman's Fund Insurance Company v. Workers' Comp. Appeals Bd.* (2010) 189 Cal.App.4th 101 (*Colomaria*), the special employer argued based exclusively on section 3602, subdivision (d) and Insurance Code section 11663 that liability rested with the general employer exclusively. (*Colomaria*, at p. 108.) The court held that if a claim does not fall within the terms of the insuring clauses of an insurance policy, coverage does not exist. (*Id.* at p. 111.) However, an insurance policy may also have specific clauses excluding coverage, which should be conspicuous and plain, clear, and narrowly construed. (*Ibid.*) In *Colomaria*, there was no endorsement or other exclusionary language in the policy obtained by the special employer that excepted or excluded coverage for special employees and the court held that joint and several liability, which was not extinguished by the labor agreement, left the special employer's insurance policy "other insurance." (*Id.* at pp. 115-116.)

*Colomaria* does not stand for the proposition that, as between joint employers, when one employer's insurer becomes insolvent, the other employer's insurer becomes fully liable. The result in the *Colomaria* opinion was the lack of an exclusion within the special employer's insurance policy of coverage for special employees. The facts of *Colomaria* are undeniably distinct from Mastache's claim because Travelers and Jessie Lord obtained an endorsement for the express purpose of excluding

17

employees like Mastache from coverage under the Travelers policy.

In short, although the parties disposed of the contractual obligation to sign the endorsement in the Travelers policy, WCAB Rules, section 2259(e)'s requirement of a written affirmation was satisfied by the labor agreement, the endorsement itself in the Travelers policy, and the Ullico policy. Accordingly, the Travelers policy is not "other insurance" within the meaning of Insurance Code section 1063.1, subdivision (c)(9) and CIGA is liable to provide coverage for Mastache's injury claim.

Given our decision, we do not reach the issue of whether WCAB Rules, section 2259, subdivision (a)(7) enacted in 2016 should have retroactive application.

Thus, we also do not address the issue whether the appeals board should have taken judicial notice of WCAB Rules, section 2259, subdivision (a)(7).

## DISPOSITION

The decision of the Workers' Compensation Appeals Board entered on August 15, 2018 is annulled and the matter is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.


CHANEY, J.

We concur:



ROTHSCHILD, P. J.          BENDIX, J.



18

Filed 10/2/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Petitioner, <br><br> v. <br><br> WORKERS' COMPENSATION APPEALS BOARD and CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, <br><br> Respondents. | B292915 <br><br> (W.C.A.B. No. ADJ7964733) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion filed in the above-entitled matter on September 18, 2019, was not certified for publication in the Official Reports. Pursuant to California Rules of Court, rule 8.1105(c), this opinion is now ordered published in the Official Reports.

_____

ROTHSCHILD, P. J.          CHANEY, J.          BENDIX, J.