Filed 3/23/26  Gerald C. Fox Foundation v. Fox CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GERALD C. FOX FOUNDATION et al., | H053043 |
| Petitioners and Respondents, | (Santa Clara County Super. Ct. No. 18PR182796) |
| v. | |
| RICHARD B. FOX, | |
| Objector and Appellant. | |

The appeal in this trust proceeding arises out of an order imposing sanctions against appellant Richard B. Fox (appellant) under Code of Civil Procedure section 128.7.[1]  The motion for sanctions was brought by respondents Gerald C. Fox Foundation (Fox Foundation or Foundation), Allison Greene, and Charles Fox (collectively, respondents).  They are beneficiaries of the Intervivos Trust of Gerald C. Fox dated August 23, 2011 (the Trust or 2011 Trust).  The trustor, Gerald C. Fox (Jerry), was appellant's brother and passed away in October 2017.  Appellant was for years the sole trustee of the Trust.

Respondents filed a petition in 2018 (the 2018 Trust Proceeding) seeking a judicial finding that a document signed in 2017 by Jerry days before he died purportedly amending the Trust (the Second Amendment) was invalid.  They also sought a judicial

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

declaration that appellant had committed financial elder abuse upon his brother Jerry. After a trial, the probate court ruled in respondents' favor, rejecting appellant's claim that Jerry's 2011 Trust was invalid. Appellant filed an appeal from the judgment (the Prior Appeal). Almost concurrently with the filing of that appeal, appellant filed a new petition to invalidate the 2011 Trust (the New Petition). Respondents opposed appellant's petition by filing a demurrer, motion to stay, and a motion for sanctions under section 128.7 (the 2020 Trust Proceeding). The probate court stayed the 2020 Trust Proceeding during the pendency of the Prior Appeal. In 2023, the Court of Appeal for the First Appellate District (Division 5) affirmed the judgment. (See *Gerald C. Fox Found. v. Fox* (Mar. 6, 2023, A165821) [nonpub. opn.] (hereafter, *Fox Foundation (A165821)*).)[2]

After the Prior Appeal became final, the probate court sustained respondents' demurrer without leave to amend. The court also imposed sanctions against appellant, concluding that the New Petition was "presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" in violation of section 128.7, subdivision (b)(1) (§ 128.7(b)(1)). The court awarded reasonable attorney fees and costs to respondents in the amount of $25,013. The final sanctions order was entered on December 26, 2024.

Appellant argues that the trial court erred as a matter of law. Appellant contends that, under the statutory scheme of section 128.7, because he was a party represented by counsel, sanctions could not be imposed against him for filing the New Petition for an improper purpose in violation of subdivision (b)(1). For reasons explained below, we

---

[2] On our own motion, we take judicial notice pursuant to Evidence Code section 452, subdivision (d) of the opinion in *Fox Foundation (A165821)*. (See *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 723, fn. 3 [appellate court may take judicial notice of its files and prior opinions related to current appeal].)

reject appellant's argument. Accordingly, we will affirm the order of December 26, 2024, imposing sanctions in the amount of $25,013 against appellant.

## I.    PROCEDURAL BACKGROUND

### A.    2018 Trust Proceeding

#### 1.    *Background*

The probate court's detailed findings of fact in its statement of decision and judgment in the 2018 Trust Proceeding included the matters stated and quoted below.

The trustor of the 2011 Trust, Jerry, "throughout his life had some issues regarding his mental capacity. He grew up in Minnesota where he graduated from high school and worked in the warehouse at his father's business, . . . held a drivers' license, bought and sold several homes, started and ran his own business, and lived independently until 1995, when he suffered a broken hip. . . . During the first half of 2011, Jerry lived at an independent living facility in Minnesota."

Jerry, as trustor, executed the 2011 Trust on August 23, 2011, in Crystal, Minnesota. Jerry's attorney prepared the Trust instrument and notarized Jerry's and appellant's signatures on the document. Appellant, who is both a medical doctor and a licensed California attorney, was named as sole trustee of the Trust, which had millions of dollars of assets.

Respondents Allison Green and Charles Fox (niece and nephew of appellant and Jerry) are beneficiaries of the 2011 Trust. Under its terms, they are entitled to specific bequests (identified stocks and interests in limited partnerships held by the Trust). Respondent Fox Foundation is a Minnesota nonprofit corporation that made distributions to charities as selected by Jerry. The Foundation is also a beneficiary of the 2011 Trust, under which it is entitled to receive at Jerry's death all residual Trust assets.

After he signed the 2011 Trust, Jerry moved to Los Gatos, where appellant resided. Jerry lived in Los Gatos the remainder of his life. "[Appellant] and his family provided care to Jerry. . . . [¶] [Appellant] managed all aspects of Jerry's life and care

3

including payment of rent, buying food, and managing Jerry's medical care." Jerry's health began declining in 2016, he was hospitalized on multiple occasions, and he lost the ability to live independently. Shortly before his death, Jerry was hospitalized in the intensive care unit (ICU) for three weeks, "suffer[ing] from serious medical conditions including chronic respiratory failure, heart failure, atrial fibrillation, and at least four strokes. . . . Jerry's respiratory failure was sufficiently advanced that he was dependent on a breathing apparatus. . . . Jerry suffered from dysphagia, or difficulty swallowing, and aspiration pneumonia, such that the doctors at El Camino Hospital determined he could not safely swallow food or liquids, and required placement of a surgically inserted feeding tube. . . . Medical records demonstrate that Jerry suffered impaired cognitive function during his final days in the hospital, including an inability to provide verbal responses to simple questions."

During his last hospitalization, on October 2, 2017, nurses and staff witnessed Jerry speaking with appellant, in which he told Jerry: there were plans upon his discharge to take him home to live with appellant and his wife; they would give him the best care possible but it would cost money; that Jerry's estate plan currently provided for his money to go to the Fox Foundation for charities; although the hospital would not allow appellant to feed Jerry at the facility, when Jerry went home, appellant and his wife would feed him whatever he wanted; they would need money to provide for Jerry's care; and Jerry needed to think about these things and they would talk again upon appellant's return.

Two days later, appellant presented Jerry, who was still in the ICU, with the Second Amendment. The document was drafted by appellant. The new instrument provided that—rather than distributing the entire balance of the residual assets to Fox Foundation as stated in the 2011 Trust—"the remaining balance of the Trust (after specific bequests to Charles Fox and Allison Greene) [would be distributed] to (1) [appellant] (45%), (2) his son John C. Fox (5%), and (3) the Foundation (50%), . . .

4

[Appellant] also added language providing that 'any trust assets received by [Jerry's Trust] from [their father's t]rust agreement . . . shall be distributed to [appellant]' rather than to the Foundation."[3]  Jerry purportedly signed the Second Amendment on October 4, 2017.[4]

Jerry passed away six days later, on October 10, 2017.

### 2. *Pleadings and Trial*

On February 28, 2018, respondents filed a petition against appellant, individually and as trustee of the Trust.  In that petition, respondents sought, inter alia, orders: (1) determining the Second Amendment to the Trust to be invalid due to incapacity and undue influence; (2) removing appellant as trustee; (3) appointing an independent trustee; and (4) determining that appellant had committed financial elder abuse.

In his verified response to the petition, appellant, as trustee of the Trust and as president of the Fox Foundation, alleged that the Second Amendment was valid.  He alleged further that if the court ultimately determined the Second Amendment invalid, it should also determine that the 2011 Trust was invalid due to Jerry's lack of capacity.

A four-day court trial on respondents' petition occurred in October 2019.  On the day before trial, appellant stipulated that the Second Amendment to the Trust *was invalid*, thereby reversing his prior position in his verified response.  As later identified by the probate court, "[t]he two key issues before the Court [were] whether, at the end of Jerry's life, [appellant] committed financial elder abuse against Jerry, and whether the [2011] Trust is valid."  After submission of the case, the probate court filed a statement of

---

**3** As stated by the probate court, under its terms, the Second Amendment that appellant drafted, "redirected millions of dollars to Dr. Fox instead of Jerry's own [F]oundation."

**4** The execution of the Second Amendment was purportedly witnessed by appellant's friend, Dr. Ronald Kite, who signed a statement at that time to that effect. However, "Dr. Kite testified no documents were read to Jerry in his presence and he did not witness Jerry signing any documents."

decision and judgment on February 13, 2020. Regarding the validity of the 2011 Trust, the court: (a) rejected appellant's contentions that the Trust was entered into based on fraud or mistake: (b) held that appellant was barred under principles of judicial estoppel and contractual estoppel from contending the Trust was invalid; (c) concluded that the Trust was valid, finding that Jerry had capacity to enter into the Trust Agreement; and (d) rejected appellant's challenge that the Fox Foundation lacked capacity to sue because it no longer existed. The probate court noted that "[it] finds [appellant's] claim that the 2011 Trust is invalid was made in bad faith, and rejects his claim on this basis as well." The court also granted respondents' request for relief that the Second Amendment be declared void. And it found that appellant had committed financial elder abuse under the Welfare & Institutions Code (Welf. & Inst. Code, §§ 15610.30, subds. (a), (c), 15610.70, subd. (a)), and respondents were entitled to reasonable attorney fees and costs according to proof.[5]

## B. Prior Appeal

After the probate court denied appellant's motion for new trial, appellant on June 8, 2020, filed a notice of appeal of the judgment in the 2018 Trust Proceeding. That Prior Appeal was decided on March 6, 2023, with the appellate court affirming the judgment. (See *Fox Foundation (A165821)*.)

## C. 2020 Trust Proceeding

Appellant on May 21, 2020—over three months after the filing of the judgment adverse to him in the 2018 Trust Proceeding—filed a petition to determine the invalidity

---

[5] The probate court noted in its statement of decision that appellant had contended that he could not be held liable for financial elder abuse because the Second Amendment " 'had no effect when it was signed, was never given any effect, and has now been stipulated to be invalid.' " The trial court disagreed with this contention, stating: "For two years Dr. Fox argued the Second Amendment was effective. One day before trial he changed course and stipulated the Second Amendment is invalid. His argument would have the Court ignore the undisputed evidence of Dr. Fox's own acts during the two years he acted as trustee, during which he asserted the Second Amendment was valid."

of the 2011 Trust (i.e., the New Petition). He brought the New Petition in his capacity as Jerry's brother and as the purported intestate heir of Jerry's estate. In the prayer of that petition, appellant requested that the court declare the 2011 Trust invalid due to fraud, mistake, impossibility, undue influence, and/or lack of capacity.

On June 22, 2020, respondents filed a demurrer to the petition. The bases for the demurrer were that appellant was contractually and judicially estopped from challenging the validity of the Trust, and there was a prior action pending on the same cause of action (i.e., the 2018 Trust Proceeding). In the alternative, respondents requested that proceedings in the New Petition brought by appellant be stayed, pending a final determination of the 2018 Trust Proceeding then on appeal.

Respondents on July 16, 2020, filed a motion for sanctions, contending that appellant had violated subdivisions (b)(1) and (b)(2) of section 128.7.[6] Respondents argued that the 2020 Trust Proceeding was "a frivolous attempt to re-litigate the exact same issues decided in the previous litigation." They claimed further that "[appellant] and his counsel knew of the New Verified Petition's insufficiency and nonetheless chose to pursue their unwarranted and frivolous claims. Thus, [appellant's] claims were advanced to cause unnecessary delay, to harass Respondents, and to needlessly increase Respondents' costs of litigation in defending this action."[7]

On October 22, 2020, the probate court granted a stay of proceedings and continued the demurrer and motion for sanctions to a date after the lifting of the stay.

---

[6] Respondents complied with the waiting (safe harbor) provisions of section 128.7, subdivision (c)(1), by serving the unfiled motion for sanctions upon appellant's counsel on June 22, 2020, more than 21 days before the motion was filed.

[7] The motion for sanctions was brought against both appellant and his then-counsel. As recited in the court's order imposing sanctions against appellant, sometime after the motion was filed, respondents advised the court that appellant's attorney had filed a petition with the bankruptcy court, and, accordingly, respondents were seeking sanctions against appellant only.

After the Prior Appeal was decided in March 2023, and after further briefing, the probate court on June 14, 2024, filed its order on respondents' demurrer and motion for sanctions. The court sustained respondents' demurrer to appellant's petition without leave to amend. The court further granted respondents' motion for sanctions, concluding that they were warranted and it would award sanctions in an amount to be determined.

The court received further briefing from the parties following its June 14, 2024 order. Respondents addressed the amount of sanctions that should be awarded, while appellant argued again that sanctions should not be awarded in any amount. On September 5, 2024, the probate court requested further briefing from respondents which addressed the substantive issues raised by appellant in its supplemental filing. The court indicated: "While . . . the court did request briefing on the amount of sanctions, the motion has not yet been granted. This is not a decision the court takes lightly. In light of [appellants'] arguments with supporting authority and the chilling effect sanctions may have on zealous advocacy, [citation], the court will consider the motion for sanctions anew but only after Respondents have had the chance to respond substantively."

After submission of a further brief by respondents, and following a hearing,[8] the probate court issued its order on December 26, 2024. The court concluded that the New Petition filed by appellant "was frivolous," and it imposed sanctions against appellant under section 128.7(b)(1). The court determined that an award of $21,360 for reasonable attorney fees was appropriate.[9] It therefore fixed the award of attorney fees and costs at $25,013 as sanctions awardable against appellant for his violation of section 128.7(b)(1).

Appellant filed a motion to vacate the sanctions order. The court denied appellant's motion on February 25, 2025.

---

[8] The record discloses that there was no appearance by appellant at the hearing on the motion held November 20, 2024.

[9] The court noted that respondents had requested an award of $46,373 as reasonable attorney fees.

Appellant filed a notice of appeal from the December 26, 2024 order awarding sanctions.[10]  (See § 904.1, subd. (a)(11).)

## II.     DISCUSSION

### A.     Motions for Sanctions Under Section 128.7

The statute at issue in this appeal, section 128.7, "authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers."  (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 514 (*Musaelian*).)  Section 128.7, subdivision (b) (§ 128.7(b)) provides in part:  "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:  [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. . . ."

Sanctions under section 128.7 may be imposed by the court "for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually.  [Citation.]" (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440 (*Peake*).)  The court may base sanctions upon a finding that the

---

**10** Appellant filed a request for judicial notice of an amended complaint that he, as a self-represented litigant (plaintiff), filed in the Superior Court of California, County of Monterey, case No. 25CV004092, against Fox Foundation and others on October 28, 2025.  Appellant's request for judicial notice is denied.  (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [court will deny request where it "present[s] no issue for which judicial notice of the[] items is necessary, helpful, or relevant"].)

9

claims are either legally or factually frivolous. "A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.] In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' [Citations.]" (*Ibid.*)

Section 128.7 is based on a federal rule, i.e., rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), as amended in 1993 (Rule 11). (See *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167.) "Therefore, federal case law construing Rule 11 (28 U.S.C.) is persuasive authority on the meaning of section 128.7. [Citation.]" (*Peake*, *supra*, 227 Cal.App.4th at p. 440.)

After receiving proper notice and an opportunity to be heard, the court may impose sanctions for violating section 128.7(b) upon the attorneys, law firm(s), or parties responsible for the violation. (See § 128.7, subd. (c).) Sanctions may include "an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (§ 128.7, subd. (d).) The court may also award the party prevailing on the motion its reasonable attorney fees and costs in presenting or opposing the motion. (§ 128.7, subd. (c)(1).) "The primary purpose of the statute is deterrence of filing abuses, not to provide compensation for those impacted by those abuses. 'While section 128.7 does allow for reimbursement of expenses, including attorney fees, its primary purpose is to deter filing abuses, not to compensate those affected by them. It requires the court to limit sanctions "to what is sufficient to deter repetition of [the sanctionable] conduct or comparable conduct by others similarly situated." [Citation.]' [Citations.]" (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 920–921 (*Optimal Markets*).)

A party seeking sanctions under section 128.7 must comply in full with the statute's safe harbor provision, under which the party and/or attorney who is the target of the sanctions motion is given the opportunity to cure the sanctionable conduct.  The statute provides that the sanctions motion "shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  (§ 128.7, subd. (c)(1).)

The trial court has "broad discretion" to award sanctions under section 128.7 if the moving party satisfies the requirements of that statute.  (*Peake*, *supra*, 227 Cal.App.4th at p. 441.)  The appellate court ordinarily reviews such an award for abuse of discretion, and it will "presume the trial court's order is correct and [will] not substitute [its] judgment for that of the trial court.  [Citation.]  [A sanctioned party will] be entitled to relief on appeal, [only if] the court's action [is] sufficiently grave to amount to a manifest miscarriage of justice.  [Citation.]"  (*Ibid.*)  However, "where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review."  (*Optimal Markets, supra*, 221 Cal.App.4th at p. 921.)  Similarly, if the question is whether, based upon undisputed facts, sanctions may be imposed under section 128.7, it is deemed a question of law that is reviewed de novo.  (*Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591 (*Li*).)

## B.  No Error in Granting Motion for Sanctions

Appellant contends that the trial court erred in awarding sanctions against him under section 128.7.  His position is purely a legal one that involves an interpretation of

11

the statute, which we review de novo.  (See *Li*, *supra*, 177 Cal.App.4th at p. 591.)[11]

Appellant argues that because he was represented by counsel, the trial court was precluded by statute from imposing sanctions against him for violating section 128.7(b)(1), i.e., filing the New Petition primarily for an improper purpose. Appellant asserts that subdivision (d)(1) of section 128.7 (§ 128.7(d)(1)) prohibited the sanctions order in this instance.  Section 128.7(d)(1)provides:  "Monetary sanctions may not be awarded against a represented party for a violation of paragraph (2) of subdivision (b)."

Respondents disagree.  They argue that section 128.7(d)(1) precludes the imposition of sanctions against represented parties *only* for a violation of section 128.7, subdivision (b)(2) (§ 128.7(b)(2)), i.e., assertion of frivolous claims, defenses, or other legal contentions.  Respondents contend that there is no legal impediment to such an award under section *128.7(b)(1)*, the subdivision at issue here.

Appellant's reading and application of section 128.7(d)(1) are incorrect.  It is plain that under subdivision (d)(1), sanctions pursuant to section 128.7 may not be imposed against a party represented by counsel for violating *subdivision (b)(2)*.  The rationale for section 128.7(d)(1) is to "bar[] an award of monetary sanctions against a party whose attorney asserts frivolous legal contentions in violation of subdivision (b)(2).  'Monetary responsibility for such violations is more properly placed solely on the party's attorneys.' [Citation.]"  (*Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 13, fn. 4, quoting Rule 11, Advisory Com., notes on 1993 amendments.)  There is no indication in the statute, however, that a represented party is immune from sanctions for violating *subdivision (b)(1)*, for presenting a document to the court "primarily for an improper

_____

**11** Appellant does not argue that, assuming the court had the legal authority to impose sanctions based upon a finding that appellant had violated section 128.7(b)(1), it abused its discretion by doing so because there was no underlying factual basis for awarding sanctions or that the amount of sanctions was unjustified.

purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (§ 128.7(b)(1).) This was the basis for the probate court's order here.

Appellant, however, makes the following two-part argument. First, that in order to impose sanctions based upon a violation of section 128.7(b)(1), the court must also find that the conduct—in this case the filing of the New Petition—was frivolous under section 128.7(b)(2), or, using the language of the statute, that the party subject to being sanctioned had falsely certified that the filing was "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" (*ibid.*).[12] In support of this position, appellant relies on *Ponce v. Wells Fargo Bank* (2018) 21 Cal.App.5th 253 (*Ponce*). Second (appellant asserts), subdivision (d)(1) precludes "a *finding* of frivolousness" (italics added), and thus appellant (a represented party) cannot be held liable for sanctions for violating section 128.7(b)(1).[13]

We conclude that: (1) assuming both that *Ponce* was properly decided (an issue that we need not determine here), and that it supports appellant's position that to find a violation of section 128.7(b)(1), a trial court must also determine that the claims were frivolous, such a finding *was* in fact made by the court here; (2) section 128.7(d)(1) does not preclude "a finding of frivolousness" in support of a sanctions request against a represented party for violating section 128.7(b)(1); and (3) *Ponce* did not consider

---

[12] The statute speaks in terms of the attorney or party certifying that "[t]he claims, defenses, and other legal contentions . . . [being] warranted by existing law or by a *nonfrivolous argument* for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7(b)(2), italics added.) It may be technically proper to state the issue as whether the imposition of sanctions for violating section 128.7(b)(1) requires, in addition to showing that the pleading was filed primarily for an improper purpose, that it was also "not nonfrivolous." To avoid use of the double negative, however, we will refer to the issue of such required showing in terms of the pleading being "frivolous."

[13] Appellant made this argument below in his motion to vacate the sanctions order. The probate court rejected the argument.

13

section 128.7(d)(1), and the case offers no support for appellant's claim that the probate court erred in concluding that he violated section 128.7(b)(1).

In *Ponce*, sanctions were imposed under section 128.7(b)(1). The appellants did not dispute the sufficiency of the evidence "to support the finding that their claims were presented primarily for an improper purpose[; however], they argue[d] that the nonfrivolous nature of the[ir] claims . . . necessarily establishe[d] their good faith." (*Ponce, supra*, 21 Cal.App.5th at p. 264.) The appellate court in *Ponce* agreed with the appellants' position, quoting case law interpreting the federal rule upon which section 128.7 was patterned (Rule 11): " '[A] non-frivolous *complaint* can never violate Rule 11, even if it was filed for an improper purpose. [Citation.]' " (*Ponce, supra*, at p. 265, quoting *Aetna Life Ins. Co. v. Alla Medical Services, Inc.* (9th Cir. 1988) 855 F.2d 1470, 1475–1476, original italics.) Because the *Ponce* court "concluded that the claims presented in the [appellants'] second amended complaint were nonfrivolous, [it] also conclude[d] that they were not presented for an improper purpose," and thus reversal of the sanctions order was required. (*Ponce, supra*, at p. 265.) Assuming without deciding the correctness of *Ponce*'s holding that a violation of section 128.7(b)(1) requires a finding by the court that the claims were frivolous, the probate court here *explicitly concluded* that the New Petition's filing was "frivolous."

There is no merit to the second part of appellant's argument. To reiterate, appellant asserts that sanctions may not be imposed under section 128.7(b)(1) against a represented party for the filing of a pleading made primarily for an improper purpose, because section 128.7(d)(1) precludes the court from making "a finding" concerning the frivolousness of that filing under subdivision (b)(2). As we have noted, subdivision (d)(1) does not so state. It merely provides that sanctions may not be imposed upon a represented party for a pleading's contents determined to be frivolous in violation of section 128.7(b)(2). There is no language in subdivision (d)(1) that may be construed as *preventing the court*—in concluding that the party acted primarily for an

14

improper purpose in violation of section 128.7(b)(1)—from making a *finding* that the contents of a represented party's pleading was frivolous. Such an interpretation would immunize a represented party from sanctions liability for a violation under *subdivision (b)(1)*, as well as under subdivision (b)(2), something not contained in the statute. To conclude that section 128.7(d)(1) prevents the court from making a finding of frivolousness to support a violation of section 128.7(b)(1) would require that this court rewrite the statute, a judicial action that is prohibited. "A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed. [Citations.]" (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74; see also *Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.* (2018) 27 Cal.App.5th 607, 618, fn. 8 ["[w]e decline to read words into a statute that do not exist in its text"].)

As explained by one court: "Pursuant to Code of Civil Procedure section 128.7, subdivision (d)(1), 'Monetary sanctions may not be awarded against a represented party for a violation of paragraph (2) of subdivision (b).' Subdivision (b)(2) requires certification that the claims, defenses, or other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law or to establish new law. The logical inference, of course, is that monetary sanctions *can* be awarded against a represented party for a violation of subdivisions (b)(1) (document presented for an improper purpose, to harass, cause unnecessary delay, or needless increase in cost of litigation); (b)(3) (allegations or other factual contentions lack evidentiary support); and (b)(4) (denials of factual allegations not warranted by the evidence)." (*Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 466, original italics, disapproved of on other grounds by *Musaelian*, *supra*, 45 Cal.4th at p. 520; see also *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 402 [notwithstanding § 128.7(d)(1)'s proscription against imposing sanctions against a represented party for violating subdivision (b)(2), "sanctions may be awarded against a party if other conditions in

15

subdivision (b) are violated, including paragraph (1), which precludes pleadings 'presented primarily for an improper purpose . . .' "].)

Appellant, again, relies on *Ponce*, in support of his position that, as a represented party, sanctions may not be imposed against him for violating section 128.7(b)(1). However, *Ponce* does not support his argument. There, as discussed *ante*, the court held that sanctions may not be imposed under section 128.7(b)(1) for claims made primarily for an improper purpose if the claims themselves were nonfrivolous. (*Ponce*, *supra*, 21 Cal.App.5th at pp. 264–265.) However, *Ponce* did *not* hold that sanctions may not be imposed against a represented party under section 128.7(b)(1) for making a claim primarily for an improper purpose because subdivision (d)(1) precludes the court from making the requisite finding that the claim asserted was also frivolous. In fact, *Ponce did not even mention* section 128.7(d)(1). (See *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1156 [" '[c]ases do not stand for propositions that were never considered by the court' "].)

The probate court indicated that the basis for its award of sanctions was section 128.7(b)(1). The court specifically acknowledged that, pursuant to section 128.7(d)(1), sanctions against appellant, as represented party, could not be imposed under subdivision (b)(2). It concluded that the New Petition filed by appellant in 2020 was frivolous in that it was barred by the statute of limitations, Probate Code section 16061.8, because it constituted a contest of the 2011 Trust filed more than 120 days after statutory notification that the trustor had died. Appellant's New Petition was filed more than two years *after* the statute for filing a petition to contest the 2011 Trust had expired, and that limitations period had been originally triggered by a notice that *appellant himself served.*

The probate court determined further that judicial estoppel applied to appellant's New Petition. It held that there were no grounds for appellant to have brought the New Petition, since it was filed *after* the probate court's statement of decision and judgment;

16

the probate court in the 2018 Trust Proceeding specifically held that appellant's challenge to the validity of the 2011 Trust was barred by judicial estoppel. And the probate court awarding sanctions, in concluding that judicial estoppel applied, rejected appellant's argument that he had filed the New Petition to " 'preserve' " the issues, because he had failed to "explain why the appellate process itself was not sufficient to preserve the issues." The probate court thus held that appellant's 2020 filing of the New Petition constituted a new pleading based on the same facts in an effort to evade a prior court ruling in the 2018 Trust Proceeding, and the filing was thus frivolous. (See *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 191.)

The probate court was empowered to impose sanctions against appellant, as a represented party, for violating section 128.7(b)(1). Subdivision (d)(1) of the statute presented no impediment to the court's imposition of sanctions for violating section 128.7(b)(1) by submitting the New Petition to the court primarily for an improper purpose after also finding that the pleading was frivolous. There was no error.

### III.   DISPOSITION

The order of December 26, 2024, imposing sanctions against appellant under Code of Civil Procedure section 128.7, subdivision (b)(1) is affirmed. Respondents shall recover their costs on appeal.

17

_____
WILSON, J.


WE CONCUR:



_____
GROVER, Acting P. J.




_____
BROMBERG, J.



*Gerald C. Fox Foundation et al. v. Fox*
H053043